IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAHN ELDRIDGE ROEDEMEIER. | ) | Case No. 06-20292-11-dls |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

# DISCLOSURE STATEMENT

## OF

## JAHN E. ROEDEMEIR

## DATED JANUARY 8, 2007

THOMAS M. MULLINIX
JOANNE B. STUTZ
EVANS & MULLINIX, P.A.
7225 RENNER ROAD, SUITE 200
SHAWNEE, KS 66217
(913) 962-8700; (913) 962-8701 (FAX)
ATTORNEYS FOR JAHN E. ROEDEMEIER

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................... 1
    The Disclosure Statement ................................................................................................. 1
    Brief Explanation of Chapter 11 ....................................................................................... 2
    Voting on the Plan ............................................................................................................ 3
    The Confirmation Hearing ............................................................................................... 4
    Confirmation .................................................................................................................... 4

**GENERAL BACKGROUND INFORMATION**................................................................... 6
    History of the Debtor ....................................................................................................... 6
    Events Leading to the Proceedings ................................................................................... 7
    Events During the Proceedings ......................................................................................... 8
    Assets and Sources for Repayment of Claims ................................................................. 10
    Liquidation Analysis ........................................................................................................ 11
    Plan Confirmation Analysis .............................................................................................. 13
    Creditors' Claims.............................................................................................................. 13
        Priority Claims ......................................................................................................... 13
        Secured Claims ........................................................................................................ 14
        General Unsecured Claims ....................................................................................... 14
        Executory Contracts and Leases ............................................................................... 14
    Personal Property ............................................................................................................. 14
    Books and Records ........................................................................................................... 15
    Tax Aspects of the Plan .................................................................................................... 15
        Tax Consequences to the Debtor .............................................................................. 16
        Tax Consequences to the Creditors........................................................................... 19
    Litigation.......................................................................................................................... 19
    Management of the Reorganized Debtor ........................................................................... 19
    Information Obtained by Plan Proponent. .......................................................................... 20

**SUMMARY OF THE PLAN OF REORGANIZATION** ........................................................ 20
    General Description of the Plan of Reorganization ............................................................ 20
    Designation of Classes of Claims and Interests................................................................. 20
        Impaired Classes ..................................................................................................... 21
    Details of the Plan ............................................................................................................ 21
        Unclassified Claims: ................................................................................................ 21
        Administrative Claims .............................................................................................. 22
        Priority Tax Claims .................................................................................................. 24
        Classified Claims ..................................................................................................... 25
        Priority Claims ......................................................................................................... 25
        Secured Claims ........................................................................................................ 25
        Unsecured Claims Without Priority .......................................................................... 27
    Means of Execution of the Plan ........................................................................................ 28
    Modification of the Plan ................................................................................................... 28
    Amendment of Claims ...................................................................................................... 28

# I.  INTRODUCTION

## A.    The Disclosure Statement

The Debtor, Jahn Eldridge Roedemeier, pursuant to Section 1125 of the Bankruptcy Code, submits this Disclosure Statement to all known Creditors and holders of Claims and Interests against the Debtor for the purpose of disclosing that information which the Bankruptcy Court has determined to be material and important for Claimants to make an informed decision in exercising their right to vote on the Plan.  Reorganization pursuant to Chapter 11 of the Bankruptcy Code depends upon the receipt of a sufficient number of votes in favor of reorganization.  Your vote, therefore, is important.

This Disclosure Statement describes various transactions contemplated under the Plan.  A copy of the Plan of Reorganization accompanies this Disclosure Statement.  Defined terms are capitalized in both the Plan and the Disclosure Statement.  [See the Plan, Definition of Terms, Article 1].

IF THIS DISCLOSURE STATEMENT IS ACCOMPANIED BY A BALLOT FOR VOTING ON THE PLAN, THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION TO ENABLE CREDITORS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.  SUCH APPROVAL DOES NOT CONSTITUTE A RECOMMENDATION OR ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.  NO REPRESENTATIONS CONCERNING DEBTOR'S ASSETS AND LIABILITIES (INCLUDING THOSE RELATING TO THE FUTURE BUSINESS OPERATIONS OR THE VALUE OF ANY ASSETS, PROPERTY, CREDITORS' CLAIMS OR SECURITIES TO BE ISSUED UNDER THE PLAN) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR VOTE IN

FAVOR OF ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN THAT CONTAINED IN THIS

DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR

DECISION.

You are urged to study the Plan in full and to consult with your counsel about the Plan

and its effect, including possible tax consequences, upon your legal rights. Please read this

Disclosure Statement carefully before voting on the Plan.

The financial information contained herein is not covered by a certified audit of

independent public accountants. For this reason the Debtor is unable to represent that the

information contained in this Disclosure Statement is without inaccuracy, although reasonable

efforts have been made to present the information fairly and accurately. Additional financial

information can be found in the Debtor's Statement of Financial Affairs, Schedules of Assets and

Liabilities and United States Trustee's Reports, all of which have been filed with the Bankruptcy

Court.

Except as otherwise expressly indicated herein, the portions of this Disclosure Statement

describing the Debtor, its business and the Plan have been prepared from information furnished

by Debtor's management.

**B.**     **Brief Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to

Chapter 11, the Debtor is authorized to reorganize or liquidate its business for its benefit and for

that of Creditors and Interest Holders. Upon the filing of a petition under Chapter 11 actions by

Creditors and other Claimants attempting to collect on pre-petition Claims or to foreclose upon

310210\2                                                                                          2

any of the Debtor's property are automatically stayed during the pendency of the Chapter 11

case.

In this case the Debtor, an individual, has continued in possession of his property. Thus, pursuant to Section 1107(a) of the Bankruptcy Code, the Debtor is vested with substantially the same powers as a trustee under the Bankruptcy Code.

## C.    **Voting on the Plan**

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization proceeding. However, liquidation of a debtor's assets is also permitted under Chapter 11. The Plan is the vehicle through which Claims of the Debtor's Creditors are satisfied. Each Creditor entitled to vote on the Plan may cast its vote for or against the Plan by completing, dating and signing the Ballot Form which shall accompany the Plan. The Bankruptcy Court will, by separate Order, order that Ballots and Objections to Confirmation of the Plan, must be received at the offices of Joanne B. Stutz , Evans & Mullinix, P.A., 7225 Renner Road, Suite 200, Shawnee, KS 66217, no later than 5:00 p.m. on the date set forth in the Ballot and the Order which shall accompany this Disclosure Statement or be provided by separate mailing.

This Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept the Plan. UNDER THE BANKRUPTCY CODE YOUR VOTE FOR ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNLESS YOU RECEIVE A COPY OF THIS DISCLOSURE STATEMENT PRIOR TO, OR CONCURRENTLY WITH, SUCH SOLICITATION. THE SOLICITATION OF VOTES ON THE PLAN IS GOVERNED BY THE PROVISIONS OF SECTION 1125(b) OF THE BANKRUPTCY CODE, THE VIOLATION OF WHICH MAY RESULT IN SANCTIONS BY THE

Case 06-20292    Doc# 83    Filed 01/08/07    Page 5 of 31

COURT, INCLUDING DISALLOWANCE OF THE SOLICITED VOTE AND LOSS OF THE "SAFE HARBOR" PROVISIONS OF SECTION 1125(e) OF THE BANKRUPTCY CODE.

Only the votes of Creditors in the Classes that are impaired by the Plan will be counted to determine if the Plan is accepted by Creditors. In this case Classes 1, 2, 4 and 5 are impaired by the Plan and, therefore, will have their votes counted. Votes on the Plan will only be counted for those Claims that are not listed as disputed, contingent or unliquidated and for those Claims for which a proof of Claim was filed before the Bar Date, if any, providing such Claim has not been disallowed or suspended prior to computation of the vote. *The Ballot Form does not constitute a proof of Claim.*

### D.    The Confirmation Hearing

The Bankruptcy Court will schedule a hearing on Confirmation of the Plan to determine if the Plan has been accepted by the requisite number of Creditors and whether the other requirements necessary to Confirmation have been satisfied. The date on which the Confirmation hearing will be conducted will be set forth in the Bankruptcy Court's Order setting the hearing on Confirmation of the Plan, which will be provided either with the Plan or in a separate mailing.

### E.    Confirmation

At the Confirmation hearing the Bankruptcy Court will determine, among other things, whether the Plan has been accepted by each impaired Class of Creditors. Under Section 1126 of the Bankruptcy Code an impaired Class is deemed to have accepted the Plan if at least two-thirds

310210v2                                                                                          4

in amount and more than one-half in number of Allowed Claims in such Class voting to accept or reject the Plan have voted in favor of acceptance.

There are two methods by which the Plan can be confirmed: (i) the "acceptance" method, in which all Impaired Classes have voted to accept the Plan as described above; and (ii) the "non-acceptance" method, in which the Plan is not accepted by one or more of the Impaired Classes, provided the Bankruptcy Court finds that the Plan does not discriminate unfairly and is fair and equitable to such Class or Classes. For a Plan to be confirmed under the "non-acceptance" method, it must be accepted by at least one Class of Claims or Interests which is impaired by the Plan. The Debtor may choose to rely upon the "non-acceptance" method to seek Confirmation of the Plan if it is not accepted by all Impaired Classes of Creditors.

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm the Plan notwithstanding its rejection by one or more Impaired Class if the Bankruptcy Court finds that the Plan is fair and equitable with respect to each Impaired Class which does not accept the Plan. With respect to Classes of secured Creditors, the fair and equitable test requires that a secured Creditor (i) retain its lien or liens and receive cash payments having a present value equal to its Allowed Secured Claim, (ii) receive the proceeds from the sale of its collateral or (iii) realize the indubitable equivalent of its Claim. With respect to a Class of unsecured Claims, the fair and equitable test requires that if each Claimant in such Class does not receive property having a present value equal to the amount of such Claimant's Allowed Claim, no junior Class can receive any property on account of such junior Claim or Interest. If the Bankruptcy Court orders Confirmation of the Plan then, pursuant to Section 1141(d) of the Bankruptcy Code,

Case 06-20292   Doc# 83   Filed 01/08/07   Page 7 of 31

the Debtor is discharged from all pre-Confirmation debts except as is provided in the Plan.

Confirmation makes the Plan binding upon the Debtor, all Creditors, Interest Holders and other

parties-in-interest, regardless of whether they voted to accept or reject the Plan.

## II.  GENERAL BACKGROUND INFORMATION

The following is a general discussion of Jahn Roedemeier, the events that led up to the

Proceedings and events occurring during the Proceedings.  The information set forth in this

section is true and correct to the best of the Debtor's knowledge, information and belief.

### A.  History of the Debtor

Jahn E. Roedemeier, the Debtor, was raised in Bourbon, Missouri, a small town on the

outskirts of St. Louis, Missouri.  After graduating in 1969 with a Bachelor of Sciences in Food

Service, Nutrition and Hospitality Management from the University of Missouri at Columbia, the

Debtor served in the United States Army, receiving his honorable discharge in 1971.  The Debtor

then worked for several years before attending Dental School at the University of Missouri in

Kansas City, from which he graduated in 1979.

Upon graduation from Dental School, the Debtor opened a dental practice with another

dentist in Pleasant Hill, Missouri, which continued until 1995.  Additionally, in 1982, the Debtor,

in partnership with another dentist, opened College Boulevard Dental Care, which was located

on College Boulevard in Overland Park, Kansas.  The College Boulevard practice was

subsequently relocated, the two initial partners departed and the Debtor entered into a new

partnership with Dr. Mark Quattrochi in 1986.  This partnership continued under the name of

Roedemeier-Quattrocchi (R-Q) until 1996, when Dr. Quattrocchi severed his relationship with

the Debtor, moving his practice to the office in Pleasant Hill, Missouri, which was also separated

from the R-Q practice. At that time the Debtor assumed all debt of the R-Q partnership and

continued operating under the R-Q name until April, 2005, when he formed Deer Creek Family

Dental Care, LLC. ("Deer Creek").

Attached hereto as Exhibit A are Schedules of the Debtor's income and expenses for

calendar years 2003, 2004 and 2005.

**B.**     **Events Leading to the Proceedings**

Dr. Roedemeier's financial reversals can be traced back to 2000, when the owner of the

building in which he maintained his practice decided not to renew the lease. Since the College

Boulevard Dental Care practice was doing well, in June, 2003, Dr. Roedemeier hired a doctor,

who worked three (3) days a week. Another dentist was slated to commence work in July, 2004,

following his graduation from dental school. In anticipation of continued growth in the practice,

Dr. Roedemeier secured SBA financing to move the practice to its current location at 13328

Metcalf. This loan, which was scheduled to close in December, 2004, would also have paid all

existing debt on the College Boulevard practice. However, a malpractice suit was filed against

Dr. Roedmeier and, although the suit was ultimately determined in the Debtor's favor, its filing

derailed the SBA loan and the two associates left for other opportunities. Unfortunately, in

anticipation of the SBA funding, the Debtor had incurred new obligations, which he was now

unable to meet.

In an effort to recuperate from the damage to the College Boulevard practice, in April,

2005, the Debtor formed Deer Creek Family Dental Care, LLC, under which name he currently

practices his trade. Still, The Matsco Companies, Inc. commenced a vigorous pursuit of the Debtor to collect the debt he guaranteed but which was incurred by R-Q and College Boulevard Dental Care. Therefore, on March 16, 2006, Dr. Roedmeier filed a personal Chapter 11 bankruptcy.

## C.     **Events During the Proceedings**

On March 17, 2006, the Debtor filed an Application seeking to employ the firm of Evans and Mullinix, P. A. as his bankruptcy counsel. The Application also sought Court approval of an arrangement for payment to the attorneys, providing for the full payment of the monthly billing statements with the proviso that a sum equal to 20% of the fees be held in the firm's trust account, pending further Orders of the Court. The Order approving the Application and the fee arrangement was entered May 2, 2006.

Bankers Healthcare Group, Inc. (Bankers) has been one of the Debtor's most aggressive creditors, holding a claim against the Debtor pursuant to a guarantee given for a corporate loan to College Boulevard Dental Care. Bankers objected to the Debtor's claim of an exemption in his homestead under Kansas law and also to a claim of exemption in certain equipment used in his dental practice. In response to the objection, which was filed on April 12, 2006, the Debtor conceded the homestead exemption, as the Debtor had not resided in the State of Kansas for at least two years. However, the Debtor continued to assert an ownership interest in the dental equipment, which had been previously owned by Roedemeier-Quattrocchi, LLC and of which the Debtor was the sole member at the time of its demise. As the company was no longer in business, the Debtor asserted that the ownership of the equipment, subject only to the lien of The

310210v2                                                                                             8

Matsco Companies, had devolved to him and therefore, he was entitled to claim it as exempt tools of the trade. By Order of the Court entered on June 22, 2006, the Court sustained Bankers' objection, holding that the equipment remained property of the defunct corporation.

Bankers also conducted a 2004 deposition of the Debtor and requested production of certain documents. The Debtor responded to this request, which sought information primarily pertaining to the dental practice of Roedemeier-Quattrocchi, LLC.

During the first few months of these Chapter 11 proceedings, various additional pleadings were filed and actions taken. The significant motions and actions have included the following:

1.    On April 3, 2006, the Debtor filed a Notice of Adequate Assurance of Payment Under 11 U.S.C. § 366, pursuant to which the Debtor disclosed that he was current in all payments due his utility providers. Therefore, the Debtor proposed that his continuing payments to these parties provided adequate assurance of future payment, negating the need for any deposits. No objections to this Notice were filed and no appearances in opposition to the Notice were entered during the hearing on April 21, 2006. Thus, on April 27, 2006, the Court entered its Order approving the Notice.

2.    On April 10, 2006, the United States Trustee conducted the Section 341 Meeting. At that time it was determined that there was insufficient interest from the unsecured Creditors to form an Unsecured Creditors' Committee. Therefore, this Proceeding has progressed without that additional expense.

Case 06-20292    Doc# 83    Filed 01/08/07    Page 11 of 31

3.     On the Petition Date the Debtor owned a one-half interest in residential real

property located in Kansas City, Missouri. The property consists of a small tract of land with a

house, which is so dilapidated that it cannot be rehabilitated but must, eventually, be demolished.

The Bank of Blue Valley holds a mortgage of approximately $18,000.00 against the property,

which was valued at approximately $30,000.00. The Debtor calculated his share of the equity in

this property to be no more than $5,500.00. On August 21, 2006, the Debtor filed a Motion to

sell his interest in the property to the co-owner, Daniel Coit, who agreed to pay $5,500.00 and to

assume all liabilities and obligations incident to the ownership of the property. At the hearing

conducted on September 15, 2006, no other parties appeared to tender competing bids and

therefore, the Motion was approved. The Order approving the sale was entered on September

22, 2006, and the sale closed on September 25, 2006.

4.     In order to determine the full extent of the Claims asserted by his Creditors, on

June 19, 2006, the Debtor filed a Motion requesting that the Court set a Bar Date for filing

Proofs of Claim. This Motion was granted by Order dated July 3, 2006. Pursuant to that Order

all Creditors were required to file their Proofs of Claim by August 15, 2006.

Attached hereto as Exhibit B is a copy of the relevant portions of the Debtor's monthly

financial reports for March, 2006, through November, 2006.

## D.     Assets and Sources for Repayment of Claims

The Debtor plans to finance the Plan payments from his future income, which is derived

from his dental practice, Deer Creek Family Dental Care, LLC (Deer Creek). Attached hereto as

Exhibit C is a schedule of the Debtor's projected future income and expenses. As the Debtor's

Case 06-20292    Doc# 83    Filed 01/08/07    Page 12 of 31

income is dependent on Deer Creek's financial stability and as Deer Creek shall be assuming

certain liabilities, the Debtor also attaches, as Exhibit D, a schedule of Deer Creek's projected

income and expenses.

### E. __Liquidation Analysis__

The Debtor believes that the Plan provides its Creditors with the greatest possible value

that can be realized on their respective Claims. If the Plan is not confirmed or consummated, the

theoretical alternatives include, in addition to dismissal of the Proceedings, (a) liquidation of the

Debtor under Chapter 7 of the Bankruptcy Code, (b) liquidation of the Debtor under Chapter 11

of the Bankruptcy Code or (c) an alternative plan of reorganization. After studying these

alternatives the Debtor believes that this Plan provides the best alternative to his Creditors and

will maximize recoveries by holders of Claims.

If no Plan is confirmed the Debtor's Chapter 11 proceedings may be converted to a case

under Chapter 7 of the Bankruptcy Code. A trustee would then be appointed to liquidate the

assets of the Debtor for distribution to Creditors in accordance with the priorities established by

the Bankruptcy Code. The Debtor believes that liquidation under Chapter 7 would result in no

distributions to unsecured Creditors because of various factors, including: (a) additional

administrative expenses resulting from the appointment of a trustee, attorneys and other

professionals to assist the trustee; (b) payment of Chapter 11 Administrative expenses;

(c) additional federal and state income taxes, which would be entitled to priority payment;

(d) additional expenses and claims generated during the liquidation and from the rejection of

leases and other executory contracts in connection with the cessation of the Debtor's operations;

Case 06-20292    Doc# 83    Filed 01/08/07    Page 13 of 31

and (e) failure to receive payments from the Debtor's future earnings. The expenses, which are paid before distributions are made to unsecured Creditors, include additional expenses which do not ordinarily exist in a Chapter 11 Proceeding.

Upon liquidation of the Debtor, the following would occur:

1.     All assets of the Debtor which are not otherwise exempt by applicable State and Federal law would be converted into cash by either selling or surrendering tangible property to the respective properly secured Creditors.

2.     Creditors with valid, non-avoidable liens would be paid from the net sale proceeds or the value of the surrendered assets in the amounts of their respective Claims, not to exceed in any instance the amount of the Creditor's interest in the property in which it has a security interest.

3.     Debts incurred, if any, during the Chapter 11 Proceedings, would be paid.

4.     Costs of administration would be paid.

5.     Priority Creditors would be paid all available funds on a Pro Rata basis up to the amounts of their respective Claims.

6.     The balance, if any, would be paid to unsecured Creditors.

Attached to this Disclosure Statement as Exhibit E is a Liquidation Analysis in which the Debtor provides greater detail of this analysis.

The Debtor has proposed the Plan as the most practical means of providing a reasonable distribution to the Creditors. The aggregate distribution to the Impaired Class of unsecured Creditors will be greater than the distribution which these Creditors might receive under a

310210v2

12

Chapter 7 proceeding, where the Chapter 7 expenses will reduce the funds available to satisfy unsecured debt. The Debtor believes confirmation and consummation of the Plan is preferable to the Chapter 7 alternative.

**F.     Plan Confirmation Analysis**

Upon confirmation of the Plan payments will be paid to administrative expense Claimants and Creditors, as outlined herein in the Section entitled Summary of Plan.

**G.     Creditors' Claims**

(ANY STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS ARE ESTIMATES OF THE DEBTOR BASED ON CURRENTLY AVAILABLE INFORMATION AND ARE NOT A REPRESENTATION THAT SUCH AMOUNTS WILL ULTIMATELY PROVE CORRECT).

The Schedules filed by the Debtor on March 17, 2006, and amended on April 21, 2006, reflect the assets and liabilities of the Debtor as of the Petition Date. Attached hereto as Exhibit F is a summary of the Scheduled Creditors, setting forth, in addition to other information, the amounts listed as owed by the Debtor on the Petition Date. The following provides a summary of the information contained in the Debtor's Schedules, which information may differ from the Proofs of Claim filed and the final determination of the debts and obligations to be paid through the Plan. Reference should be made to the Schedules and Exhibit F for greater detail regarding the individual Creditors.

**Priority Claims.** The Debtor scheduled three (3) priority Creditors, with claims totaling $14,997.00.

Case 06-20292    Doc# 83    Filed 01/08/07    Page 15 of 31

**Secured Claims**.  The Debtor scheduled three (3) secured Creditors, with claims totaling $760,928.00.

**General Unsecured Claims**.  Claims of the unsecured Creditors were scheduled in the approximate amount of $914,777.51, which is comprised primarily of guarantees and trade debts related to the Debtor's businesses.

**Executory Contracts and Leases**.  The Debtor listed five unexpired leases and service contracts as of the date of filing.

**H.**     **Personal Property**

As of the Petition Date, the Debtor listed two (2) tracts of real property having an aggregate value of $840,000.00, and the following personal property, in which the Debtor alleged an ownership interest:

| | | |
|---|---|---|
| 1. | Cash and Funds in Bank Accounts: | $281.00 |
| 2. | Deposits: | $6,476.54 |
| 3. | Household Furnishings: | $5.000.00 |
| 4. | Clothing: | $800.00 |
| 5. | 2005 Tax Refunds: | $11,344.00 |
| 6. | Dental Equipment: | $20,000.00 |

Further detail regarding the Scheduled Claims and any Administrative Claims incurred during the Chapter 11 Proceedings may be found in the Debtor's court files which are available for inspection at the Bankruptcy Court or at the offices of the Debtor's counsel.  Those secured Creditors whose security has a value less than the amount of their Claim may be able to assert a Claim as an unsecured Creditor in addition to their secured Claim.  The Debtor contends that there are no such Claims.

Case 06-20292   Doc# 83   Filed 01/08/07   Page 16 of 31

## I. **Books and Records**

During the two years immediately preceding the filing of the Petition, none of the

Debtor's books and records relating to his affairs have been destroyed, lost or disposed of, other

than in the ordinary course, to the best of the Debtor's knowledge. The Debtor and a financial

consultant employed by Deer Creek have been responsible for the preparation of monthly

financial reports filed in these Proceedings and the Debtor has filed complete federal and state

income tax returns through calendar year end 2005.

## J. **Tax Aspects of the Plan**

The following is a general summary of certain material tax issues that may affect the

Debtor. These issues include modification of debt deemed to be cancellation of debt (COD),

accrual of interest on such debt, excludability of COD income and the corresponding required

reduction (mainly net operating loss and basis). Bankruptcy is by its nature very dynamic and

subject to change. Bankruptcy taxation is likewise dynamic and projected results may change

significantly, depending upon actions by creditors and other factors, all of which may be outside

the control of the Debtor. The Debtor's strategy is to maximize tax benefits and minimize tax

costs coming out of bankruptcy. Necessarily, the Debtor must alter his strategy to react to the

actions of others throughout the bankruptcy. Accordingly, this discussion will attempt to

describe the areas set forth above.

It is impractical to comment on all aspects of federal, state and local tax laws which may

affect the Debtor or his Creditors. The following discussion is merely a summary of some of the

general income tax principles applicable to the Debtor and does not purport to be a complete

Case 06-20292    Doc# 83    Filed 01/08/07    Page 17 of 31

analysis or listing of all potential tax issues or risks. It is based, in part, on predicted future events which may not occur as predicted. There are a number of tax issues to which there are no definite answers under existing law or for which answers are determined by actual facts. Moreover, because of changes and factual circumstances affecting the Debtor and changes in legislation or statutory interpretation, other tax risks or issues may arise in the future which are unforeseen at the present time.

IN VIEW OF THE COMPLEXITIES OF THE TAX LAWS, INTEREST HOLDERS AND CREDITORS ARE ENCOURAGED TO CONSULT THEIR OWN ADVISORS WITH RESPECT TO TAX ISSUES AFFECTING THEM AND THE DEBTOR. THIS SUMMARY DISCUSSION IS NOT INTENDED AS A SUBSTITUTE FOR CAREFUL TAX ANALYSIS BY EACH CREDITOR. THE TAX CONSEQUENCES TO INDIVIDUAL CREDITORS AND INTEREST HOLDERS MAY VARY.

### 1. **Tax Consequences to the Debtor**

The Debtor is an individual. To the extent the Debtor is entitled to receive a refund for income taxes paid, those refunds may be offset by the taxing authorities to satisfy pre-existing tax obligations. The Debtor may also incur either capital gains or losses associated with the sale of his personal property; however, the Debtor does not believe any such gains or losses will cause any material tax obligations.

### **General**

There is generally little or no differentiation between pre and post bankruptcy earnings and losses. The Chapter 11 debtor continues to operate in essentially the same manner as it did

prior to bankruptcy for tax purposes and continues to file all tax returns during the pendency of the bankruptcy. Post petition income taxes are generally administrative expenses.

The Debtor does not believe the Plan will have any tax consequences to him personally. However, the effect of the proposed Plan on Creditors is less certain and depends upon the specific modification proposed regarding each Creditor's debt and manner in which the Creditors have previously accounted for such debt. Accordingly, each Creditor must individually analyze the impact of the proposed Plan on its debt.

## Cancellation of Debt (COD)

COD income is generally defined as the excess of the adjusted issue price of the outstanding debt over the amount paid to repurchase such debt. The Internal Revenue Code (I.R.C.) Section 108 sets forth the rules involving COD income. Under I.R.C. § 108 COD income is excluded from gross income to the extent that a taxpayer is insolvent before and after the COD, or it is excluded in full without regard to insolvency if the taxpayer Debtor is in Chapter 11. Under the Plan all unsecured Creditors will share Pro Rata in any funds remaining after payment to the priority, Secured and other senior Classes of Creditors. The unsecured Creditors, in accordance with the Plan, are owed approximately $876,709.11. Any amount that is not received by the unsecured Creditors, constitutes COD income which may be excluded from taxation under I.R.C. § 108.

## Debt Restructuring

Restructuring of debt, even if the face amount of the debt is unchanged, may also create COD income, depending on the nature and extent of modifications. If the modifications of debt

Case 06-20292    Doc# 83    Filed 01/08/07    Page 19 of 31

are sufficiently material in the aggregate under IRS promulgations and case law, then the old

debt instruments will be deemed to be exchanged for new instruments, creating a taxable event.

It does not currently appear that the Debtor has any such instruments that would require a

restructuring or modification.

## Attribute Reduction

The price for exclusion of COD income is the reduction of tax attributes. Under I.R.C.

Section 108(b) tax attributes, to the extent of excluding COD income, are reduced in the

following order:

(i)     Net operating losses for the current taxable year and the Debtor's NOL carryovers
        on a dollar for dollar basis;

(ii)    Business tax credits (multiplied by three to create a loss equivalency);

(iii)   Minimum tax credits;

(iv)    Capital loss carryovers;

(v)     Basis reduction for real and personal property;

(vi)    Passive activity loss and credit carryovers; and

(vii)   Foreign tax carryovers.

Thus the projected net operating losses may be reduced by projected COD income, but

the exact amount of this attribute reduction cannot be determined until the tax returns are

completed and the amount of cancellation of debt income becomes more crystallized.

### 2.     Tax Consequences to the Creditors

Both secured and unsecured Creditors may be either required to recognize income or allowed a deduction as a result of the implementation of the Plan. The exact tax treatment depends on each Creditor's method of accounting, the nature of each Creditor's Claim, the property being received and exchanged for such Claim, if any, and whether and to what extent such Creditor has taken a bad debt deduction in prior taxable years with respect to a particular debt owed to it by the Debtor.

EACH HOLDER OF A CLAIM, WHETHER SECURED OR UNSECURED, IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE TREATMENT OF ITS CLAIM UNDER THIS PLAN.

### K.     Litigation

At the time the Debtor filed its Chapter 11 Proceedings, it was engaged in litigation with Banker's Healthcare Group, Inc., The Matsco Companies, Inc. and Patterson Dental Supply, Inc. Upon confirmation of the Plan all suits still pending against the Debtor shall be dismissed with prejudice by the plaintiffs in those actions. The Debtor has determined that he holds no causes of action exist against third parties. Nevertheless, if any such valid actions are alleged to exist, and if the expense justifies the expected returns, the Debtor shall pursue those causes of action.

### L.     Management of the Reorganized Debtor

Because the Debtor is a individual, the Debtor will continue to manage his own affairs with the assistance of such professionals as he deems necessary. These professionals may

Case 06-20292    Doc# 83    Filed 01/08/07    Page 21 of 31

include attorneys and tax advisors, who shall be paid at such rates and in such amounts as are agreed upon between the parties at the time their services are requested.

## M.     Information Obtained by Plan Proponent

The Plan Proponent compiled this Disclosure Statement in reliance on its personal knowledge of the Debtor and after reviewing the court file, the monthly financial reports, the audited and unaudited financial reports, the appraisals of the assets, if any, and other related documents available to all Creditors and parties in interest.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION

## A.     General Description of the Plan of Reorganization

The Plan is the result of lengthy and detailed examinations of the Debtor, his dental practice and the various alternatives available to him for reorganization. The Debtor believes the Plan offers the best and most appropriate opportunity for the Creditors to realize the maximum value of their Claims. The following description of the Plan is intended as a summary only and each Creditor should refer to the Plan for details concerning the treatment of Claims. The Plan provides, in general, that after payment of Allowed Administrative Expense Claims, certain designated Classes of Creditors will receive payments on their Allowed Claims over the life of the Plan. The Allowed Unsecured Claims and Allowed Undersecured Claims shall receive a dividend of approximately three percent (3%) of their Claims over the Plan Period

## B.     Designation of Classes of Claims and Interests

All Claims and Interests against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions

of the Debtor or rejection of executory contracts and/or unexpired leases and all Interests arising

from the ownership of the Debtor, whether resulting in an Allowed Claim or not, shall be bound

by the provisions of the Plan. Classification of Claims against and Interests in the Debtor, with

the exception of Administrative Claims and Priority Tax Claims which are unclassified pursuant

to 11 U.S.C. § 1123(a)(1), shall be classified as follows:

| | |
|---|---|
| Class 1: | Allowed Secured Claim of the Johnson County Treasurer. |
| Class 2: | Allowed Secured Claim of Ownit Mortgage Solutions. |
| Class 3: | Allowed Claim of Bank of Blue Valley. |
| Class 4: | Allowed Claim of National Bank of Kansas City. |
| Class 5: | Allowed Unsecured Claims Without Priority and Allowed Undersecured Claims. |

**Impaired Classes:** Classes 1, 3, 4 and 5 are impaired by this Plan.

**C.**     **Details of the Plan**

For further detail concerning the treatment of the Classes identified herein and the means

of execution of the Plan, Creditors are urged to review the Plan of Reorganization, filed

simultaneously herewith, in its entirety.

**Unclassified Claims:**

In accordance with 11 U.S.C. § 1123(a)(1) Administrative Claims and Allowed Priority

Tax Claims of the kinds specified in Sections 507(a)(1), 507(a)(7) and 507(b) of the Bankruptcy

Code, respectively, have not been classified in the Plan and are excluded from the Classes

310210v2

21

discussed in the Disclosure Statement. Such unclassified Claims will be treated as described below.

**Administrative Claims.** Subject to the provisions contained in the Plan and as described in this subsection, each holder of an Allowed Claim for administrative costs and expenses of the kind specified in Sections 507(a)(1) or 507(b) of the Bankruptcy Code, shall receive, on account of and in full satisfaction of such Allowed Claim, cash equal to the amount of such Allowed Claim, unless the holder agrees to a less favorable treatment of such Claim. Without limiting the foregoing, all unpaid fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date or as soon thereafter as is practicable. All Allowed Claims for administrative costs and expenses shall be paid by the Reorganized Debtor.

The Bankruptcy Code provides for two types of Administrative Claims. The first consists of Administrative Claims incurred by the Debtor in the ordinary course of its affairs since the Petition Date, including taxes and ordinary business expenses. Payment on these Administrative Claims will not be made until such payment otherwise would have become due in the ordinary course of the Debtor's business or under the terms governing the Claim in the absence of these Proceedings.

The second type of Administrative Claim consists of fees and expenses as allowed by Order of the Bankruptcy Court (i) for the services of Professionals employed by the Debtor and (ii) for expenses incurred by other parties in interest making a "substantial contribution" in the Proceedings. The Debtor is not presently aware of the extent, if any,

Case 06-20292    Doc# 83    Filed 01/08/07    Page 24 of 31

to which any party in interest will seek reimbursement for expenses in making a "substantial contribution" in the Proceedings. Neither does the Debtor believe any such request will be made.

Under the Plan all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Proceedings) and all other requests for payment of administrative costs and expenses incurred before the Effective Date under §§ 507(a)(1) or 507(b) of the Bankruptcy Code (except for Claims for trade debt incurred in the ordinary course of business and Claims under 28 U.S.C. § 1930) shall be filed no later than thirty days after the Effective Date, unless such date is extended by the Bankruptcy Court and on notice to the Reorganized Debtor. Any such Claim that is not filed within this deadline shall be forever barred and any holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such request by the applicable deadline shall be forever barred from asserting such Claims against the Debtor, the Reorganized Debtor or any of its property.

The Debtor anticipates that Administrative Claims will approximate $45,000.00. These Claims, which are owed to Evans & Mullinix, P.A., shall be paid in monthly installments of $600.00 until paid in full. While the Reorganized Debtor shall remain personally liable for payment of these Claims, Evans & Mullinix, P.A. has agreed that the payments may be tendered by Deer Creek, the Debtor's dental practice.

Case 06-20292   Doc# 83   Filed 01/08/07   Page 25 of 31

**Priority Tax Claims.** The Allowed Priority Tax Claims consist of the tax Claims

of the Internal Revenue Service and the Kansas Department of Revenue. The

priority portions of these Claims will be paid in full and to the extent that they are

nondischargeable as set forth herein. The dischargeable portion of these Claims

shall be treated as a Class 5 Claim. The Debtor proposes the following treatment

of the Priority portion of these Claims:

| Creditor | Amount Owed | Claim Basis |
|----------|-------------|-------------|
| IRS | $66,272.42 | 941 taxes incurred by Roedemeier & Quattrochi DDS (3rd & 4th qtr 2004) and 1st qtr 2005); and 2004 inc taxes. |

The IRS Claim shall be amortized at 7% per annum over a five (5) year period.

Commencing on the 15th day of the first month following Confirmation and

continuing until the Claim is paid in full, the Debtor shall pay the IRS $1,312.27

each month, which shall be applied first to interest and then to principal.

| Creditor | Amount Owed | Claim Basis |
|----------|-------------|-------------|
| KDOR | $6,690.07 | R-Q Withholding tax for Dec 16, 2004 to July 15, 2005 (return w/o payment); 2003 (interest for shortage on return; 2004 (unpaid income taxes). |

The KDOR Claim shall be amortized at 7% per annum over a five (5) year period.

The Debtor shall make monthly payments of $132.47, commencing on the 15th

day of the first month following Confirmation and continuing until the Claim is

paid in full.

Case 06-20292    Doc# 83    Filed 01/08/07    Page 26 of 31

## Classified Claims

**Priority Claims.** There are no unpaid Priority Claims.

## Secured Claims

Class 1: (Allowed Secured Claim of the Johnson County Treasurer). The Allowed Secured Claim of the Johnson County Treasurer consists of $2,179.99 for the 2005 Personal Property Taxes for office equipment currently used by Deer Creek Family Dental Care, L.L.C. The Personal Property Taxes, to the extent they remain outstanding, shall be paid by Deer Creek. The Class 1 Creditor filed a Claim in the amount of $2,799.93 for 2005 Real Property Taxes on the Debtor's homestead. The 2005 Real Property Taxes have been paid in full and therefore, the Class 1 Creditor shall receive nothing further on this Claim.

Class 1 is impaired under this Plan.

Class 2: (Allowed Secured Claim of Ownit Mortgage Solutions). Class 2 consists of the Allowed Secured Claim of Ownit Mortgage Solutions. This Creditor's Claim consists of a first mortgage against the Debtor's residence in the amount of $618,750.00 on the Petition Date and a second mortgage against the Debtor's residence in the amount of $123,678.00 on the Petition Date. The Debtor has maintained his regular monthly mortgage payments during these Proceedings and will continue to do so according to the terms of the Promissory Notes and Mortgages.

Class 2 is unimpaired under this Plan.

Class 3: (Allowed Claim of Bank of Blue Valley).  Class 3 consists of the

Claim of Bank of Blue Valley.  On the Petition Date this Claim was

secured by real property in which the Debtor held a fifty percent (50%)

interest.  That property has been sold subject to the lien of the Bank of

Blue Valley.  The purchaser has also assumed full responsibility and

liability for payment of the amount owed the Bank of Blue Valley.  This

Class 3 Claimant shall therefore, receive nothing under the Debtor's Plan.

Class 3 is impaired under this Plan.

Class 4: (Allowed Claim of National Bank of Kansas City).  Class 4

consists of the Allowed Claim of National Bank of Kansas City, which

arises from three leases entered into for the benefit of Deer Creek Family

Dental Care, pursuant to which Deer Creek leased certain pieces of

equipment.  The Debtor believes the leases are disguised financing

agreements, and therefore, proposes amortizing the value of the subject

equipment, $60,373.96, over a five (5) year period at an interest rate of

seven percent (7%) per annum.  Because these obligations were incurred

for the benefit of Deer Creek and should have been entered into in that

entity's name, the Debtor shall assign and Deer Creek shall assume this

obligation.  Deer Creek shall then make monthly payments of $1,195.48,

Case 06-20292   Doc# 83   Filed 01/08/07   Page 28 of 31

commencing on the 15th day of the first month following Confirmation

and continuing until the Claim is paid in full.

Class 4 is impaired under this Plan.

### Unsecured Claims Without Priority.

Class 5: (Allowed Unsecured Claims Without Priority and Allowed

Undersecured Claims). Class 5 consists of the Allowed Unsecured Claims

without Priority and Allowed Undersecured Claims. The Class 5

Creditors shall share Pro Rata in a total distribution of $30,000.00, which

shall be paid in five (5) annual installments of $6,000.00. The payments

to the Class 5 Claimants shall be paid beginning on either (i) the first

Anniversary Date, or (ii) in the event the first Anniversary Date is earlier

than the fifteenth (15th) day of the Anniversary Month, then on the

fifteenth (15th) day of the Anniversary Month, or (iii) in the event the first

Anniversary Date is later than the fifteenth (15th) day of the Anniversary

Month, then on the fifteenth (15th) day of the next month following the

Anniversary Month, and shall continue for the next four (4) years

thereafter. The Class 5 Claims are valued in the aggregate at $876,709.11.

Attached hereto as Exhibit F is a Claims analysis, setting forth the

Claims of the Class 5 Creditors, the amounts on which payments shall be

calculated and the estimated Plan dividend.

Class 5 is impaired under this Plan.

Case 06-20292    Doc# 83    Filed 01/08/07    Page 29 of 31

### D.    Means of Execution of the Plan

The means necessary for the execution of the Plan include continuation of the Debtor's

dental practice, from which the Debtor has historically taken income of approximately

$50,000.00 to $60,000.00 annually. The Debtor shall, and believes he can, increase his income

to the amount necessary to enable him to make all payments due under the Plan. The Debtor, as

reorganized, will retain and will be revested in all property of the Estate, excepting property

which is to be sold or otherwise disposed of as provided herein, executory contracts which are

rejected pursuant to this Plan and property transferred to Creditors of the Debtor pursuant to the

expressed terms hereof. The retained property shall be used by the Debtor in the ordinary course

of his personal affairs.

### E.    Modification of the Plan

The Debtor may propose amendments or modifications to the Plan at any time prior to

the Confirmation Date with leave of the Bankruptcy Court. After the Confirmation Date parties-

in-interest, including the Debtor, may, with Bankruptcy Court approval and so long as it does not

materially or adversely affect the interests of Creditors, remedy any defect or omission or

reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be

necessary to carry out the purposes and intent of the Plan.

### F.    Amendment of Claims

Claimants shall not be permitted to amend or otherwise modify any Claim after the

Confirmation Date without leave of the Bankruptcy Court, unless the Claimant has specifically

reserved a right to amend its Claim.

310210v2

28

This Disclosure Statement is dated the 8th day of January, 2007, and is hereby approved

by the undersigned.


_____
Jahn E. Roedemeier


Submitted by:

Evans & Mullinix, P.A.


_____
Thomas M. Mullinix, KS #7309
Joanne B. Stutz, KS #12365; MO #30820
7225 Renner Road, Suite 200
Shawnee, KS 66217
(913) 962-8700; (913) 962-8701 (FAX)
*Attorneys For Jahn E. Roedemeier*

310210v2

29